******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SAURABH BOHRA *v.* NEHA KOCHAR
## (AC 47864)

Alvord, Elgo and Pellegrino, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment dissolving his marriage to the defendant and granting certain other relief. The plaintiff claimed, inter alia, that the court abused its discretion in issuing certain orders with respect to his health savings account (HSA), an asset awarded to the plaintiff in the dissolution. *Held*:

The trial court did not abuse its discretion in determining that the defendant had complied with the plaintiff's discovery requests related to the defendant's handbag business, as there was evidence in the record, in the form of the defendant's testimony, that she had produced the available documents.

The trial court's finding that the defendant's handbag business had not generated income for the defendant was not clearly erroneous, as the court had before it sufficient evidence regarding the business to determine the amount of any income the defendant had received from it.

The trial court abused its discretion when it improperly entered certain orders requiring that the unreimbursed medical expenses of the parties' children first be paid using the plaintiff's HSA and that the plaintiff provide the defendant with a copy of the HSA card, as, to the extent the court's orders provided the defendant with access to postjudgment contributions made by the plaintiff, the orders potentially could have served as an improper postjudgment property assignment in violation of the statute (§ 46b-86 (a)) governing modification of alimony or support orders and judgments.

Argued April 14—officially released July 14, 2026

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the defendant filed a cross complaint; thereafter, the case was tried to the court, *Klau, J.*; judgment dissolving the marriage and granting certain other relief, from which the plaintiff appealed to this court; subsequently, the court, *Klau, J.*, issued a corrected memorandum of decision, and the plaintiff amended his appeal. *Reversed in part*; *orders vacated*.

*Stacie L. Provencher*, with whom were *Beck S. Fineman* and, on the brief, *Campbell D. Barrett*, for the appellant (plaintiff).

*John F. Morris*, for the appellee (defendant).

*Opinion*

ALVORD, J. The plaintiff, Saurabh Bohra, appeals from the judgment of the trial court dissolving his marriage to the defendant, Neha Kochar.[1] On appeal, the plaintiff claims that the court (1) erred in failing to find the defendant noncompliant with respect to discovery requests regarding a handbag business and (2) abused its discretion in issuing orders with respect to the plaintiff's health savings account (HSA). In relation to the plaintiff's second claim on appeal, we reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our review of the plaintiff's claims. After five days of trial, the court, *Klau, J.*, rendered a judgment of dissolution on July 11, 2024, and issued a corrected memorandum of decision on November 15, 2024 (memorandum of decision). The court made the following findings. The parties are both from India, where they were married in December 2006 in an arranged marriage. The parties moved to the United States in 2007 and to Connecticut in 2011. They have two minor children, born in 2012 and 2015.

In early 2019, the parties purchased the marital home in Farmington. Also in 2019, the defendant opened a business importing handbags from India and reselling them. The plaintiff supported the idea of the defendant opening the business, and the parties invested $27,500 of their savings to help start the business. The defendant had limited work history in the United States. At the time of trial, the defendant worked part-time at a retail clothing store earning a weekly income of $329 gross, $281 net, and also had become employed in February 2024, as a math teaching specialist with the West Hartford Board of Education, earning $715 gross weekly during the school year. The defendant hoped to return to the same position the following school year, but the job availability was uncertain. The plaintiff worked for

---

[1]The parties have a related appeal, *Bohra* v. *Kochar*, 240 Conn. App. 297,    A.3d    (2026), which we also officially release today.

Aetna CVS Health, earning a weekly income of $3145 gross, $2096 net.

The court entered the following orders, relevant to this appeal, in its memorandum of decision. The court awarded the parties joint legal custody of the children and ordered that the defendant would have final decision-making authority. The court awarded primary physical custody to the defendant and set forth a parenting time schedule.

With respect to child support, the court found the presumptive amount of child support to be $443 paid weekly by the plaintiff to the defendant and ordered child support in that amount. The court ordered that the plaintiff would pay 57 percent, and the defendant 43 percent, of the minor children's unreimbursed medical, dental, and similar expenses, in accordance with the child support guidelines.

The court awarded the defendant alimony in the amount of $450 monthly for eight years. The court ordered that the alimony would be nonmodifiable until August 1, 2025. Thereafter, the alimony was made modifiable as to amount but not to term. The court also ordered the plaintiff to pay the defendant alimony in the amount of 25 percent of his gross bonus each year.

The court divided the parties' property with the expressed intention of awarding the defendant "slightly more than half of the net assets of the marital estate," on the basis of the plaintiff's "substantially greater ability than the [defendant] to earn future income and save for retirement." The court ordered the parties to sell the marital home and divide the net proceeds of the sale 55 percent to the defendant and 45 percent to the plaintiff. The court ordered that each party retain their individual bank accounts and that the plaintiff retain his "vested/unvested RSU's, HSA account, ESOP/ETRADE account, Coinbase Crypto and Robin Hood Crypto and stock accounts."[2]

---

[2]The court ordered each party to retain their own 401 (k), IRA and Roth IRA retirement accounts and any pensions, but ordered the plaintiff

The court ordered the plaintiff to continue to provide health insurance coverage for the minor children as long as they are eligible and ordered that "[a]ny uninsured health-care expenses of the children shall be paid first by the [plaintiff's] [HSA] plan. The [plaintiff] shall provide the [defendant] a current and valid copy of the HSA card so she can pay for covered expenses for the children." This appeal followed.[3]

Before turning to the plaintiff's claims on appeal, we first set forth the overarching standard governing our review of claims in dissolution actions. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the [evidence] presented. . . . It is within the province of the trial court to find facts and draw proper inferences from the evidence presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, *we allow every reasonable presumption in favor of the correctness of its action*. . . . [T]o conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is *no evidence* in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

---

to transfer to the defendant the entirety of his Fidelity Disney 401 (k) account and $110,000 from his Vanguard CVS 401 (k) account.

[3]As noted previously, the court issued its memorandum of decision on July 11, 2024, and the plaintiff filed an appeal. The plaintiff also filed a motion to reargue, correct, clarify, and further articulate the trial court's decision on July 31, 2024, and a corrected motion on August 7, 2024. On November 15, 2024, the court issued a memorandum of decision on reconsideration. The plaintiff thereafter amended his appeal. The plaintiff also filed a motion for articulation, which was denied. The plaintiff filed a motion for review of the denial. This court granted review but denied the requested relief.

As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . .'' (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kirwan* v. *Kirwan*, 185 Conn. App. 713, 726, 197 A.3d 1000 (2018).

I

The plaintiff's first claim on appeal is that the court erred with respect to orders related to the defendant's handbag business. We are not persuaded that the court abused its discretion in determining that the defendant had complied with the plaintiff's discovery requests. We also are not persuaded that the court's finding that the business did not generate income attributable to the defendant was clearly erroneous.

The following additional procedural history is relevant. The plaintiff served discovery requests on the defendant in September 2022, which were the subject of a hearing in April 2023. On April 24, 2023, the court, *Alfano, J.*, issued an order requiring the defendant to produce certain documents to the plaintiff's counsel by May 1, 2023. On May 9, 2023, the plaintiff filed a motion in limine, in which he alleged that the defendant had not complied with discovery requests and had engaged in fraudulent conduct and litigation misconduct. Specifically, he alleged that the defendant was concealing income from her handbag business. As a result, the plaintiff requested that the defendant "be precluded from offering any evidence relative to the income of this business and because the plaintiff is without any ability to calculate this income or the amount that she has secreted away with her cousin in India, he moves that his bonus income from employment be excluded from any financial calculations in connection with this case . . . .'' On May 12, 2023, the court, *Klau, J.*, heard argument on the motion in limine and reserved ruling on it.

On July 6, 2023, the plaintiff filed a motion for discovery sanctions, in which he again alleged that the defendant had failed to comply with court orders regarding the production of documents relating to her business income. He further alleged that the defendant had provided fraudulent invoices relating to the cost of goods sold. The plaintiff also filed a motion for contempt on August 31, 2023, which he amended on December 7, 2023.

The plaintiff repeatedly raised the defendant's purported failure to produce documents in response to his discovery requests during the multiday trial. During the February 2, 2024 hearing, the court stated that it was making a finding, on the basis of the defendant's testimony, that "she ha[d] substantially complied with all discovery requests related to the handbag business."

In its memorandum of decision, the court further found: "The [defendant] operated the handbag business from her home. She sold most of her product through online e-commerce sites such as Etsy. She placed orders with her cousin in India. He shipped the handbags to the U.S. Most of the inventory was kept in boxes in the basement of the parties' home. The parties filed joint federal and state tax returns with the assistance of a tax preparer, George Jacob, who has assisted the parties with their taxes since 2008. The tax returns for 2019 and 2020 show no income attributed to the business. A 2021 K-1 shows a net operating loss of $9795. . . . The parties' 2022 tax return lists a net loss of $1856.

"These are net losses, i.e., after deductions for business expenses. The parties appear to have been aggressive in taking certain deductions, such as for home office expenses. Even so, there is no evidence that the company's revenues from sales have ever exceeded the cost of goods sold by more than several thousands of dollars.

"The [plaintiff] suspects that company invoices do not accurately reflect the actual cost of goods that the [defendant] purchases from India. He pointed to a few discrepancies in the costs of goods listed on some invoices.

He also believes that the [defendant] failed fully to comply with certain discovery requests directed towards her business records.

"After careful consideration of the totality of the evidence, the court concludes that the [plaintiff's] suspicion is just that—a suspicion. Again, the [defendant's] handbag business is a tiny operation, in its infancy, run out of her home. There may be some minor discrepancies in some of the [defendant's] business records. Yet there is nothing in the evidentiary record that comes remotely close to persuading the court by a preponderance of the evidence that revenues have ever exceeded the cost of goods sold by more than a few thousands of dollars.

"As to the [plaintiff's] belief that the [defendant] has not fully complied with discovery, the court flatly rejects that position. If the [plaintiff] had reasonable suspicions about the income the handbag business was allegedly generating—from a business that he initially supported and which operated out of the marital residence—he could have conducted discovery concerning the business before trial. Instead, he filed supplemental production requests after the first day of trial. . . . The court heard the discovery dispute on August 3, 2023, and issued disclosure orders. . . . The [defendant] subsequently testified that she followed the court's directives and produced every business record she could find. The [plaintiff] does not believe her testimony. The court does. The court reiterates previous rulings from the bench: the [defendant] has complied with the [plaintiff's] discovery requests.

"In conclusion, the court attributes no additional income to the [defendant] attributable to the business." (Citations omitted; footnote omitted.) The court also denied the plaintiff's motion for contempt.

On appeal, the plaintiff first contends that the court improperly found that the defendant had complied with the plaintiff's discovery requests. Second, he argues that the court's imputation of zero income to the defendant

from the business was clearly erroneous.[4] We examine each argument in turn.

With respect to the defendant's discovery compliance, there is evidence in the record, in the form of the defendant's testimony, that she produced the available documents. The defendant's testimony was subject to the court's credibility determination and, to the extent that it conflicted with any evidence presented by the plaintiff, that was a matter for the court to resolve. See *Marzaro* v. *Marzaro*, 231 Conn. App. 85, 119, 333 A.3d 134, cert. denied, 351 Conn. 925, 333 A.3d 795 (2025). The trial court resolved the question by expressly crediting the testimony of the defendant. "[T]he trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony and, therefore, is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) *Trent* v. *Trent*, 226 Conn. App. 791, 809, 321 A.3d 454 (2024). Moreover, the record contains substantial documentary evidence regarding the business, including emails, invoices, and federal and state

___

[4]The plaintiff also challenges as clearly erroneous the following statement of the court: "If the [plaintiff] had reasonable suspicions about the income the handbag business was allegedly generating—from a business that he initially supported and which operated out of the marital residence—he could have conducted discovery concerning the business before trial." The plaintiff argues that this statement is a clearly erroneous factual finding and points to instances in the record in which the plaintiff, prior to trial, sought discovery regarding the business. Assuming arguendo that this statement amounts to a finding and is clearly erroneous, the error is harmless. "[W]here . . . some of the facts found [by the trial court] are clearly erroneous and others are supported by the evidence, we must examine the clearly erroneous findings to see whether they were harmless, not only in isolation, but also taken as a whole. . . . If, when taken as a whole, they undermine appellate confidence in the court's [fact-finding] process, a new hearing is required." (Internal quotation marks omitted.) *C. D.* v. *C. D.*, 218 Conn. App. 818, 828 n.6, 293 A.3d 86 (2023). The court found that the defendant complied with the plaintiff's discovery requests. Thus, the challenged statement regarding timing of the discovery requests is not a finding that would have affected the court's ruling on the discovery issue. See *Levine* v. *Levine*, 238 Conn. App. 653, 663, 355 A.3d 1144 (2026).

tax returns for multiple years. The court reasonably concluded that the defendant had complied with the plaintiff's discovery requests. Accordingly, we reject the plaintiff's argument.

With respect to the plaintiff's argument that the court failed to attribute income to the defendant from the business, we are not persuaded that the court's finding that the business generated zero income attributable to the defendant is clearly erroneous. "Because it is the trial court's function to weigh the evidence and determine credibility, we give great deference to its findings. . . . In reviewing factual findings, [*w*]*e do not examine the record to determine whether the* [*court*] *could have reached a conclusion other than the one reached.* . . . Instead, we make every reasonable presumption . . . in favor of the trial court's ruling." (Emphasis in original; internal quotation marks omitted.) *Kirwan* v. *Kirwan*, supra, 185 Conn. App. 736.

In the present case, the court had before it sufficient evidence regarding the business to determine the amount of any income the defendant received from it. As the court found, the defendant's 2021 schedule K-1[5] stated a net operating loss of $9795, and the parties' 2022 federal tax return reported a net loss of $1856.[6] Moreover, there was evidence that the plaintiff had involvement in the preparation of the tax returns. The defendant testified that the plaintiff corresponded with Jacob and made decisions regarding both their personal and business tax returns. Additionally, the defendant introduced into evidence emails between the plaintiff and Jacob. In an April 2022 email, the plaintiff wrote that he approved

[5]"A schedule K-1 is the document that states each individual partner's proportionate income or loss based upon [his or her] percentage ownership. The income or loss on the schedule K-1 is in turn reported on each partner's individual tax return." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 224 Conn. App. 45, 49 n.4, 311 A.3d 235, cert. denied, 349 Conn. 902, 312 A.3d 585 (2024).

[6]The court also had before it the parties' financial affidavits, including the defendant's affidavit in which she reported no income from the business.

the prepared business return and directed Jacob to file it. Thus, there was evidence in the record that the business had not generated income for the defendant, which the plaintiff had acknowledged. Because the court's finding regarding the business income is supported by evidence and we are not left with any firm conviction that a mistake was made, we conclude that the court's finding was not clearly erroneous.

II

The plaintiff's second claim on appeal is that the court improperly entered orders requiring that the children's unreimbursed medical expenses first be paid using the plaintiff's HSA and that the plaintiff provide the defendant with a copy of the HSA card. Specifically, he argues that the orders regarding the "[HSA] and the orders concerning the payment of the children's unreimbursed medical . . . expenses are not only internally inconsistent, but further result in error because they create both an improper postjudgment property order and a deviation from the child support guidelines without the requisite findings." We conclude that the court abused its discretion.

The following additional procedural history is relevant. In its property division orders, the court ordered that the plaintiff retain his HSA. As part of its child support orders, the court ordered that the plaintiff would pay 57 percent, and the defendant 43 percent, of the minor children's unreimbursed medical, dental, and similar expenses, in accordance with the child support guidelines. The court then ordered the plaintiff to continue to provide health insurance coverage for the minor children as long as they are eligible and ordered that "[a]ny uninsured health-care expenses of the children shall be paid first by the [plaintiff's] [HSA] plan. The [plaintiff] shall provide the [defendant] a current and valid copy of the HSA card so she can pay for covered expenses for the children."

The following legal principles are relevant to our resolution of the plaintiff's claim. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole. . . . [W]e are mindful that an opinion must be read as a whole, without particular portions read in isolation, to discern the parameters of its holding." (Internal quotation marks omitted.) *Hallock* v. *Hallock*, 228 Conn. App. 81, 90–91, 324 A.3d 193 (2024).

"[O]ur courts have no inherent power to transfer property from one spouse to another in a marital dissolution proceeding. . . . Instead, that power rests upon an enabling statute, General Statutes § 46b-81 (a), which provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either spouse all or any part of the estate of the other spouse. . . . Critically, under § 46b-81 (a), the court does not retain continuing jurisdiction over any portion of the judgment that constitutes an assignment of property. . . . The court's authority to distribute the personal property of the parties must be exercised, if at all, at the time that it renders judgment dissolving the marriage. Therefore, a property division order generally cannot be modified by the trial court after the dissolution decree is entered . . . ." (Citations omitted; internal quotation marks omitted.) *Richman* v. *Wallman*, 172 Conn. App. 616, 620, 161 A.3d 666 (2017).

Unreimbursed medical expenses are a component of child support and are governed by General Statutes § 46b-84 (f) (2) (C), which provides in relevant part that "[a]n order for payment of the child's medical and dental expenses . . . that are not covered by insurance or reimbursed in any other manner shall be entered in accordance

with the child support guidelines established pursuant to section 46b-215a." The child support guidelines further provide that "[t]he amount of such order to be paid by each parent shall be determined in accordance with subparagraphs (A) to (D), inclusive, of this subdivision." Regs., Conn. State Agencies § 46b-215a-2c (f) (3). Calculation according to the guidelines provides each parent's presumptive percentage share. See id., § 46b-215a-5c (a) ("The current support, health care coverage contribution, and child care contribution amounts calculated under section 46b-215a-2c of the Regulations of Connecticut State Agencies . . . are presumed to be the correct amounts to be ordered. The presumption regarding each such amount may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case.").

In its memorandum of decision, under a section titled "property orders," the court ordered that the plaintiff retain his HSA, which is a tax-advantaged savings account for the purpose of paying for qualified medical expenses.[7] See *Duso* v. *Groton*, 353 Conn. 667, 681–82, 347 A.3d 131 (2025).[8] Under a section titled "child support," the court properly ordered each party to pay the children's unreimbursed medical expenses according to their respective presumptive percentage, with the

[7] In his proposed orders, the plaintiff requested that the court award him his HSA.

[8] "An HSA is a creature of federal law. . . .

"A touchstone of an HSA is the tax advantages it provides. Contributions to a qualified HSA, within the prescribed contribution limits, are tax deductible . . . and employer contributions are excluded from the employee's gross income. . . . Additionally, distributions from an HSA used to pay qualified medical expenses are excluded from gross income and, thus, are tax-free for the account beneficiary. . . .

"Although HSAs are intended to help individuals pay for qualified medical expenses, distributions from an HSA can be used for any purpose. . . . The caveat to the unlimited use of funds in an HSA is that an account beneficiary who chooses to use distributed funds for anything other than qualified medical expenses will generally have those distributions taxed as gross income, and such distributions are subject to an additional 20 percent tax." (Citations omitted; footnote omitted.) *Duso* v. *Groton*, supra, 353 Conn. 681–82.

plaintiff paying 57 percent and the defendant 43 percent. The court further ordered that "[t]he parties shall exchange documentation of such expenses monthly. Reimbursements shall be made within fourteen . . . days of such exchange." A completed guidelines worksheet reflecting the presumptive percentages is contained within the court file. Accordingly, the court properly considered and applied the guidelines when finding and ordering the presumptive percentage shares with regard to unreimbursed medical expenses. See *Reizfeld* v. *Reizfeld*, 125 Conn. App. 782, 795, 40 A.3d 320 ("[t]he presumption regarding [the amount of health care expenses and childcare costs] may be rebutted by a specific finding on the record that such amount would be inequitable or inappropriate in a particular case" (internal quotation marks omitted)), cert. denied, 300 Conn. 915, 13 A.3d 1103 (2011). Moreover, the court set forth a procedure for the parties to exchange documentation of expenses and appropriately make reimbursements. The plaintiff does not challenge the court's property division or child support orders on appeal.

In a later section of its memorandum of decision, titled "health insurance," the court made the challenged orders requiring that the children's expenses first be paid through the plaintiff's HSA and that the plaintiff provide the defendant with a copy of the HSA card.[9] To the extent that this order permits the defendant to retain access to the plaintiff's HSA, an asset awarded to the

---

[9]The defendant had requested this order in her proposed orders. She further requested an order providing that, "[*t*]*o the extent there remain uninsured health-care costs after application of HSA monies*, then pursuant to the Child Support Guidelines, the plaintiff shall be responsible for 72 percent and defendant shall be responsible for 28 percent of [the unreimbursed medical expenses]." (Emphasis added.) In his motion for reargument, the plaintiff argued that the orders requiring that the children's expenses first be paid through the HSA and that the plaintiff provide the defendant with a copy of the HSA card were inequitable and inconsistent with the remainder of the court's orders, particularly insofar as they allowed the defendant "the ability to access an asset allocated to the plaintiff . . . to pay her court-ordered share of medical expenses for the children." In her amended proposed orders, the defendant responded that "the plaintiff's claim that he should have sole

plaintiff in the dissolution, it is inconsistent with the court's property distribution and child support orders.

Moreover, the evidence at trial was that the plaintiff made pretax contributions to the HSA from his paycheck in the amount of $140 weekly. To the extent the court's orders provide the defendant with access to postjudgment contributions made by the plaintiff, the orders potentially could serve as an improper postjudgment property assignment in violation of General Statutes § 46b-86 (a).[10] See *Buehler* v. *Buehler*, 138 Conn. App. 63,

benefit of company paid HSA funds to reduce his portion of the uninsured health-care share but not the defendant's share, should be rejected."

At oral argument before this court, the defendant's counsel represented that the court's orders would operate to reduce only the plaintiff's share of the unreimbursed medical expenses. We note that this position is contrary to that taken by the defendant in her proposed orders before the trial court. "We do not look favorably on the [defendant's] efforts to change positions on appeal." *Buxenbaum* v. *Jones*, 189 Conn. App. 790, 811, 209 A.3d 664 (2019). Because we conclude that either construction of the orders results in inconsistencies within the memorandum of decision, we need not address the defendant's contention, made for the first time on appeal, that the orders would reduce only the plaintiff's share of the unreimbursed medical expenses.

[10]*Nedder* v. *Nedder*, 226 Conn. App. 817, 825, 320 A.3d 180 (2024), does not provide authority for the orders entered in the present case. In *Nedder*, the trial court awarded the plaintiff an HSA and ordered that it "be used solely for the children's medical expenses . . . ." (Internal quotation marks omitted.) Id., 820. On appeal, this court rejected the defendant's claim that the court erred in rendering that order, concluding that "it was legally and logically correct for the court to equitably divide the parties' property and order the accounts at issue to be used for their originally intended and historical purposes." Id., 826. This court considered that there was evidence at trial that the HSA at issue had been created with the intention of using the funds for the children's medical expenses. Id., 825. Additionally, the plaintiff's proposed orders requested that he retain the HSA with the limitation that the account be used for the children's medical expenses. Id. Finally, the plaintiff requested, during his testimony, that the account be designated for use only for that purpose and that it be distinguished as not existing for his personal benefit. Id. The defendant did not object or raise a concern regarding the plaintiff's proposed use of the account.

The present case is distinct from *Nedder* because there was no evidence in the record that the account was created for the purpose of paying for the children's medical expenses, the court did not order that the HSA be used solely for the purpose of the children's medical expenses, and

70–71, 50 A.3d 372 (2012). Accordingly, we conclude that the orders constitute an abuse of discretion and must be vacated.[11] See *Raymond* v. *Briere*, 236 Conn. App. 589, 610, 349 A.3d 311 (2025) (reversing judgment only as to order requiring plaintiff to undergo psychological evaluation and to comply with any treatment recommendations resulting from such evaluation and vacating that order; affirming judgment in all other respects).

The judgment is reversed only as to the orders that the children's unreimbursed medical expenses first be paid through the plaintiff's HSA and that the plaintiff provide the defendant with a copy of the HSA card and those orders are vacated; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

---

the court already had awarded the HSA to the plaintiff before ordering that the defendant use the account to pay the children's expenses.

[11]We further conclude that vacating these orders will not affect the trial court's mosaic, as the orders are severable in that their "impropriety does not place the correctness of the other orders in question." (Internal quotation marks omitted.) *Clark* v. *Clark*, 127 Conn. App. 148, 159–60, 13 A.3d 682, cert. denied, 301 Conn. 914, 19 A.3d 1260 (2011); see also *Bento* v. *Bento*, 125 Conn. App. 229, 236 n.8, 8 A.3d 531 (2010).